UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

GERALD WESLEY MILLER,

          Petitioner,          3:96-cv-00114-CL

          v.                   FINDINGS AND
                               RECOMMENDATION

GEORGE BALDWIN,

          Respondent.

CLARKE, Magistrate Judge.

## Introduction

Petitioner Gerald Wesley Miller's first wife, Crystal
Miller, disappeared from their home in Marion County in 1984.
His second wife, Carol Miller disappeared five years later in
1989, from their home in Harney County. In 1983, petitioner was
convicted in Marion County Circuit Court of murdering both
women. He received two life sentences. Although no bodies or

crime scene were ever discovered, the circumstantial evidence of Miller's guilt was strong, particularly relating to Carol. This court has tremendous empathy for the victims and their families, whose loss is hard to imagine.

As detailed below, this case is as procedurally and substantively complex as any habeas case ever coming before this court. Despite the substantial and persuasive evidence of petitioner's guilt, this court has concern and has struggled with whether petitioner's due process rights under the United States Constitution were violated when both murder counts were tried together. This court has a strong opinion that if the count charging petitioner with the death of Crystal Miller had been tried separately and without reference to or evidence of the second count charging petitioner with the death of Carol Miller, that it is possible if not probable that petitioner would not have been convicted. After closely reviewing the extensive record, this court gave long and serious consideration to recommending that the verdict on Count One, as to Crystal, where the evidence was not as strong, be vacated and a new trial be ordered as was done in *Bean v. Calderon*, 163 F.3d 1073 (9ᵗʰ Cir. 1988).

However, unlike in *Bean*, in this case, two experienced state trial judges held hearing and carefully considered the law and the evidence, and they both ruled that, under Oregon law, even if the cases were severed and tried separately, the facts

2 - FINDINGS AND RECOMMENDATION

and circumstances of the disappearance of one wife would be admissible at the trial of the other.

The crux of this dispositive issue is best summarized by the colloquy from the December 18, 1992 pre-trial hearings motion before Judge Sloper.

> Ms. Middle: Your Honor, there is the fact that you were indicating in chambers that the state would be allowed to bring evidence of one murder into the trial of the other.
>
> Court: It is my intention to make that ruling, notwithstanding they have been separated for the purpose of trial, that the evidence of one could legally received in the one case that's being tried at the time.

Pre-trial Hearing Transcript, p. 4.

This court is respectful, but not entirely convinced that this evidentiary decision and the underlying analysis were correct. The prejudicial impact of such evidence would, in the mind of this court, also probably outweigh the probative value of two disappearances that took place in different counties, five years apart.

However, the cross admissibility of evidence ruling was based on state law, and well settled law dictates that such a decision is entitled to deference by a federal habeas court. Given the cross admissibility of evidence ruling, no prejudice arose from the counts being tried together because the jury was going to hear the evidence relating to both counts even if the counts were tried separately.

## Findings and Recommendation

Petitioner is in the custody of the Oregon Department of Corrections pursuant to a Judgment dated April 14, 1993, from the Marion County Circuit Court after two convictions for Murder.

A summary of the relevant facts giving rise to petitioner's convictions is as follows:[1]

On January 10, 1984, petitioner's wife Ruth Crystal Miller ("Crystal") disappeared from their home in Marion County, Oregon. Petitioner told several people that she had "left him and ran away," and he gave conflicting accounts about her disappearance. He claimed that she had taken as little as $100 and told others she had taken $5,000. He told people that she had taken personal photos and a suitcase full of clothes, but none of those items were found to be missing. Crystal's locked car was found at a turn around on the farm where they lived and worked and petitioner told people that she must have hitched a ride. However there was no evidence that she had ever hitched and there was testimony that she would not have hitched. There was no explanation as to why she would have hitched rather than taking one of the two cars that were available to her.

---

[1]

This summary is taken from the parties briefs which include extensive citations to supporting evidence in the state court record. The supporting citations have not been included in this Findings and Recommendation. That each of these facts is supported by evidence in the record is not seriously disputed.

Evidence showed that Crystal was close to her family and kept in frequent and regular contact with them. After her disappearance Crystal never contacted her children again. Crystal was described as frugal and not very adventurous. She did not travel much and did not know a foreign language.

At the time Crystal disappeared, petitioner was involved in a relationship with a woman named Patty Gorrell. The day that Crystal disappeared, petitioner called Patty at 7:30 a.m. and told her that Crystal had left him and that they could finally be together.

At his boss's insistence petitioner called the Marion County Sheriff's office in the early afternoon and reported that Crystal was missing. He told the Sheriff that he had gone to work at 7:00 a.m., and that when he came home for lunch at noon, his wife and car were gone. He said that family photos, some clothes and about $700 was also gone. Petitioner was calm and cooperative during this interview.

The next day, Crystal's sister, the Miller sons, and petitioner's daughter-in-law, Susan, came over from Harney County. Petitioner told them that Crystal had left with two suitcases of clothes and that he thought she had taken the bus to Bend. These witnesses testified that graduation pictures, Crystal's wallet and drivers' license, her "Grandma brag book," new clothes she had received at Christmas and a new suitcase were all still in the house. During this visit, they dined, went

5 - FINDINGS AND RECOMMENDATION

sightseeing, shopping and went to the Oregon coast. In Susan's opinion, petitioner acted like nothing was the matter. Petitioner suggested that Crystal might have gone to Mexico, which, to Susan, would have been out of character.

Within a couple weeks of Crystal's disappearance, petitioner and Patty Gorrell openly entered into a relationship that included sexual relations. Petitioner spent money on Patty and gave her Crystal's car. Patty ended the relationship later that Spring but petitioner continued to pursue her.

When Crystal's sister visited petitioner in the Fall of 1984, petitioner told her to take whatever she wanted of Crystal's belongings.

Petitioner divorced Crystal *in abstentia* in 1985. Police investigated Crystal's disappearance, but she has never been located. Since her disappearance there has never been any activity on her bank account and a passport has never been applied for. In April, 1989, petitioner told an employee at Blue Heron Farm where he worked that he knew Crystal was dead. Within a few months of Crystal's disappearance, petitioner moved in with Carol and they were married on October 12, 1985. On May 21, 1989, Carol disappeared from their home in Harney County, Oregon, where they were living and working on Kiger Ranch. Petitioner gave conflicting accounts and made incriminating statements about her disappearance. He claimed that on the morning of May 22, 1989, he drove Carol to Boise, Idaho and put

6 - FINDINGS AND RECOMMENDATION

her on a plane to Arizona. There was evidence that petitioner did go to Boise and bought a one-way plane ticket to Arizona for Carol about 2 hours before the plane departed. However, the ticketing agent did not see Carol and there was no baggage checked. Carol never boarded the plane and the ticket was not used.

That same morning, petitioner called Carol's parents and told them that Carol had left him. He was upset and said that he had put her on an airplane in Boise to go to the Southwest to be with hippie friends. Carol's mother did not think Carol had any hippie friends and did not know her to act impulsively.

That evening petitioner went to Susan and John Miller's house and petitioner told John he had put Carol on a plane to Arizona to see her doctors. He told him she "flew the coop and wouldn't be back." Petitioner had Carol's dogs with him, seemed nervous and had an odd sunburn.

There was testimony that petitioner was seen by friends driving back to Harney County from the Malheur National Forest on the evening of May 21, 1989. Petitioner claimed that he was not in the Malheur Forest that evening.

Carol was very close to her Mother and sent tape recorded letters to her daily. Carol did not have any children, but she had two small dogs that "were like children" to her. Wherever Carol went, the dogs went with her. The day petitioner claimed he had put Carol on the plane, he was seen with the dogs and

7 - FINDINGS AND RECOMMENDATION

told family that she had left them behind. Multiple witnesses testified that Carol would not have left without taking the dogs.

The day Carol disappeared petitioner told people that she had left him. However, a few days prior to her disappearance she told petitioner's daughter in law she loved petitioner and thought they could make their marriage work.

The day after Carol's disappearance, petitioner left Harney County and returned to Salem where he had a girl friend named Linda DeBrae. Shortly after Carol disappeared, petitioner gave Linda Carol's jewelry and told her that he bought it at an estate sale.

In August 1989, DeBrae asked petitioner if it was possible he had a split personality and that his "other personality" had killed Crystal and Carol. Petitioner responded that "yeah, that could be possible. LeBrae subsequently confronted petitioner about his missing wives while they were driving. Petitioner pulled off the road and put his hands on her chest and neck and she was very frightened.

LeBrae began to break up with petitioner after that. In October, she told him he had killed his wives and petitioner hung his head and said nothing. Later she suggested that he take a polygraph and he replied "I would probably flunk it."

Petitioner was interviewed by police on June 1, 1989 and when he was asked if he knew Carol's location, petitioner hung

8 - FINDINGS AND RECOMMENDATION

his head and shook it "yes." When asked if he knew whether Carol was dead, petitioner again shook his head "yes." Petitioner stated several times that he knew Carol was dead and that he knew where her body was.

In January 1992, petitioner began pursuing a relationship with Margarita Garcia, the 18-year old daughter of one of the migrant workers at the farm where petitioner worked. He told a friend that he thought that for a non-Mexican to own property in Mexico, he would have to be married to a Mexican. He expressed interest in marrying Margarita and told her that he loved her.

In May 1992, petitioner told a friend that he was thinking of moving to Mexico. He said that they couldn't get him for what he had done here because Mexico would not extradite him. He said he was worried he would be arrested soon.

On May 15, 1992, the Marion County Sheriff and Detective Scharn went to the Blue Heron Farm with an arrest warrant for petitioner and a warrant to search his trailer. They questioned petitioner before telling him about the arrest warrant or the fact that an indictment had been returned.

The investigation of Carol's disappearance included sending flyers and information on both Crystal and Carol to all police agencies in Oregon, to the state police in all other 49 states, to the Armed Forces, some federal agencies, and all member countries of Interpol. No agency ever reported anything on either Crystal or Carol.

9 - FINDINGS AND RECOMMENDATION

Investigators dug around the Kiger Ranch, searched the back roads and flew over the area to see if they could find anything unusual.   They found nothing.   There are thousands of mines, holes, and wells in the area.   They searched the Idol City Mine area in some detail with a cadaver dog and heat sensors after they learned that friends reported seeing petitioner driving in that area on May 21. There was no blood found in petitioner's pick-up. In sum, police did not find a body or a crime scene.

In a superseding indictment dated December 29, 1992, a Marion County Grand Jury[2]  charged petitioner with two counts of murder. Count One alleged that petitioner murdered   Crystal Miller on or about January 10, 1984, "in a county which the Grand Jury cannot readily determine . . . by a means unknown to the Grand Jury."   Resp. Exhibit 102.   Count Two alleged that petitioner murdered Carol Miller on or about May 21, 1989, "in a county which the Grand Jury can not readily determine . . . by a means unknown to the Grand Jury." Id.

Petitioner moved the court for an "order severing count I from Count II for the purposes of separate trials," Petitioner's Exhibit 2,  on the ground that "joinder of [the] two charges in one trial would not comport with the legislative intent of ORS 132.560 and would especially be unfairly prejudicial to the

---

2

It is not clear from the record before the court why petitioner was indicted for the murder of Carol in Marion County when virtually all of the evidence presented at trial suggested that she was murdered in Harney County.

10 - FINDINGS AND RECOMMENDATION

defendant." Petitioner's Exhibit 3. Petitioner's Motion cited as authority the "U.S. Constitution, 5th and 14 Amendments; Oregon State Constitution, Article I, Sec. II," and ORS 132.560.

Petitioner's Memorandum in support of the Motion to Sever argued: "Under ORS 132.560, the court must apply two tests to safeguard the defendant's right to a fair trial. The first test determines whether joinder is proper. The second test considers whether the defendant would be prejudiced by joinder." Petitioner's Exhibit 4, p. 2.

Petitioner argued that joiner was not proper because the alleged crimes were not part of a common scheme or plan or of the same or similar character; that evidence in the two cases would not be mutually admissible; that there was a lengthy time lapse between the alleged crimes; and, that there was no overlapping proof. Petitioner's Exhibit 4, p. 2 - 21.

Concerning the prejudice component, petitioner argued that the jury would improperly consider the evidence cumulatively if both counts were tried together and that joinder would inhibit petitioner's right to testify - or not to testify. Id., p. 21 - 24.

Concerning the cross admissibility of evidence, the court indicated as follows:

> Ms. Middle: Your Honor, there is the fact that you were indicating in chambers that the state would be allowed to bring evidence of one murder into the trial of the other.

11 - FINDINGS AND RECOMMENDATION

> Court: It is my intention to make that ruling, notwithstanding they have been separated for the purpose of trial, that the evidence of one could be legally received in the one case that's being tried at the time.

Pre-trial Hearing transcript, p. 4

The Honorable Val Sloper granted petitioner's motion and ordered the counts severed for trial as follows:

I have given this [the motion to sever counts] my utmost and careful consideration and I have concluded that the murders are so completely unrelated, except the fact that the defendant is the same in both and the alleged victims are wives of the defendant, that there are no other similarity in the cases and the motion to sever should be allowed. I will do that, and I will permit the State to proceed on whichever murder count they choose to for the first trial.

Transcript Designation (#72) December 18, 1992, Pre-trial Hearing Tr. 4.

Thereafter, the case was reassigned to the Honorable Paul J. Liscomb. The state filed a Motion for Change of Judge alleging that Judge Liscomb "is prejudiced against the State of Oregon and that the State of Oregon cannot receive a fair and impartial hearing or trial before said Judge in this matter." Petitioner's

12 - FINDINGS AND RECOMMENDATION

Exhibit 6.³  The state's motion was allowed by the December 24, 1992 order of The Honorable Greg West, *Id.*, and Judge Liscomb was replaced by Judge West.  After Judge West was assigned to the case, the state filed a motion to reconsider Judge Sloper's order severing Counts 1 and 2, Petitioner's Exhibit 7, and a Supplemental Memorandum in Support of Motion to Sever (#5).

In petitioner's Supplemental Memorandum in Support, petitioner 's argument focused on his right to testify – or not to testify. Petitioner argued that joinder would be unduly prejudicial because: "If the Defendant exercises his constitutional right to testify in the Crystal Miller case, as he wishes to, he forfeits his right not to testify in the Carol Miller case.  If the Defendant exercises his constitutional right to not testify in the Carol Miller case, as he wishes to, he forfeits his right to testify in the Crystal Miller case." Petitioner's Exhibit 5, p. 1.  Petitioner went on to discuss a defendant's right to testify primarily in terms of the Oregon constitution, but cited federal case law regarding the law governing the waiver of constitutional rights.⁴ In oral argument on the motion, petitioner's trial counsel suggested that there

---

3

The motion was supported by an affidavit that has not been made part of the record in this case.

4

In footnote 3, petitioner cited a law review article titled "Due process v. Defense Counsels Unilateral Waiver of the Defendants Right to Testify," 3 Hast Con L Q 517, 535 (1976).

13 - FINDINGS AND RECOMMENDATION

is a distinction between Oregon and federal law regarding the right to testify.[5]

Judge West granted the state's motion to reconsider and denied defendant's (petitioner's) motion to sever, finding *inter alia*: 1.) Under ORS 132.560, each count of murder would qualify as a same or similar offense and that the evidence of one crime would be properly admitted at the trial of he other crime for the purposes of showing the defendant's motive and intent as well as his plan or preparation to commit the crime, and that such evidence would be relevant to show that the deaths were not accidental or from natural causes or that the disappearances were not a coincidence; 2.) The victims were in the same class in that they were both married to the defendant and that each crime encompasses similar acts in that the alleged murder of each wife occurred at a time when defendant was involved in a relationship with another woman and had proposed marriage to the other woman; 3.) That there were significant similar features in each crime, specifically:

> that each victim was financially dependent upon the defendant. Each victim had a desire to live elsewhere than the Willamette Valley where the defendant was maintaining his relationship with another woman. Each victim was tightly connected to her family. Each victim had been seen with the defendant just prior to her disappearance. The

---

[5]
"It is our position that the right to testify or not testify is a stronger right in the state of Oregon than perhaps it is federally and, therefore, federal case law is not necessarily dispositive of that." Petitioner's Exhibit 13, p. 12.

defendant apparently did little to locate either victim and disposed of or attempted to dispose of significant personal property of each victim directly after her disappearance. The defendant has told numerous inconsistent stories about the disappearance of each wife. Immediately after their disappearance, the defendant did nothing to conceal the affairs and spent money openly without any apparent concern for apprehension by the wife.

4.) That the state's need for the evidence was significant because its case was based on circumstantial evidence in that no bodies have ever been found and that the probative value of the evidence was not substantially outweighed by any unfair prejudice to the defendant; 5.) ORS 136.643 provides that when a defendant chooses not to testify, it creates no presumption against such person and that such a defendant is subject to cross-examination only upon facts to which he testified. "Thereby the defendant may choose to testify as to one count and not the other without fear that the state would cross-examine the defendant about the count to which the defendant chose not to testify;" 6.) The defendant has not made a sufficient showing within the sealed affidavit submitted to the court that he has important testimony to offer as to one count and a strong need to refrain from testifying in the other count such as it would outweigh the other factors cited above, and information contained in the defendant's affidavit will be brought out by the other witnesses. Petitioner's Exhibit 12 (Order denying Defendant's Motion to Sever).

Petitioner proceeded to trial on both counts.

Walter Todd represented petitioner at trial. Following an 8 week jury trial, petitioner was convicted of both counts and sentenced to two consecutive life sentences. Resp. Exhibit 101.

Petitioner directly appealed his convictions, but the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp. Exhibits 103 - 107, and the United States Supreme Court denied petitioner's petition for writ of certiorari.

Petitioner's direct appeal became final on May 11, 1995. Resp. Exhibit 107. On January 23, 1996, petitioner filed a petition for habeas corpus relief under 28 U.S.C. § 2254 alleging four grounds for relief.

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) became effective on April 24, 1996. On December 30, 1996, the court allowed petitioner's motion to stay his federal habeas corpus proceeding to pursue post-conviction claims in state court.

In May, 1997, the court, on its own motion dismissed petitioner's federal petition with leave for petitioner to re-file. Petitioner again requested a stay and on June 10, 1997, the court reinstated the case and the stay.

On June 29, 2000, the court again on its own ordered this case be dismissed with leave to re-open at such time as petitioner had exhausted his state post-conviction remedies.

16 - FINDINGS AND RECOMMENDATION

On July 27, 2000, petitioner moved to "abate" the federal proceeding while the state post conviction proceedings continued. Petitioner also filed an Amended Petition striking several claims.

On July 31, 2000, the court again re-opened the case and abated the proceeding pending the resolution of the state PCR case. On January 11, 2011, the state PCR appellate judgment issued.[6]

In February 2011, the court lifted the stay and on December 21, 2011, petitioner filed a Second Amended Petition for Habeas Corpus Relief (#94) adding numerous claims in addition to the two grounds alleged in the Amended Petition filed in 2000. Petitioner's claims ("Grounds for relief") are separately set forth in Appendix 1. The claims can be generally categorized as follows: 1) failure to sever the two counts was improper and

---

[6]

The procedural history of petitioner state post-conviction proceeding is as follows: Petitioner filed a petition for post-conviction relief, but the Umatilla County Circuit Court denied relief. Resp. Exhibits 138 - 141. However a notice of appeal was not timely filed. Petitioner filed a motion for a delayed appeal, but the Oregon Court of Appeals denied the motion in a written opinion, and the Oregon Supreme Court denied review. Resp. Exhibits 144 - 154.

In order to allow petitioner to pursue an appeal of the PCR judgment the parties stipulated that petitioner would seek relief by means of a second identical petition and record to that in his previous PCR proceeding. Resp. Exhibit 155. The trial court ordered "that the Judgment in the prior action shall become the judgment in this case," meaning that relief was denied. Resp. Exhibit 156. The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Resp. Exhibits 157 - 161.

constituted trial court error (Grounds 8A-C), ineffective assistance of trial counsel (Grounds 9D-I, ineffective assistance of appellate counsel (Grounds 10 A-F, and prosecutorial misconduct (Grounds 11A-B); 2.) ineffective assistance of trial counsel based on his handling of an expert witness (Grounds A-B); 3.) Petitioner's right to counsel was violated by statements to the police (Ground 8E); and 4.) the evidence was insufficient to convict petitioner, giving rise to claims of trial court error (Ground 8D), ineffective assistance of trial counsel (Ground 9C), and ineffective assistance of appellate counsel (Ground 10A).

Although petitioner alleges his claims separately, the argument is somewhat consolidated. The crux or gravaman of petitioner's primary argument is that "petitioner's right to a fair trial was severely prejudiced and compromised as a result of having to defend against two murder charges in the same proceeding before the same jury." Memorandum in Support (#96) p. 29.

Respondent argues "[t]he court should deny all of petitioner's claims because many of them are procedurally defaulted, and all lack merit." Response (#109) p. 1.

**Standard of Review:**

A petition for habeas corpus relief under 28 U.S.C. § 2254 filed before the effective date of the AEDPA is not governed by the AEDPA. Lindh v. Murphey, 521 U.S. 320 (1997); Ayres v.

18 - FINDINGS AND RECOMMENDATION

Belmontes, 549 U.S. 7, 14 (2006). This is so even if the petitioner later amends the petition. Smith v. Mahoney, 611 F.3d 978, 994-95 (9ᵗʰ Cir. 2010); Mancusco v. Olivarez, 292 F.3d 939, 949 (9ᵗʰ Cir. 2002) (holding under *Lindh v. Murphey*, 521 U.S. 320 (1997) that review of amended petition filed after AEDPA's effective date was governed by pre-AEDPA standards and precedents because original petition was filed prior to the effective date of the AEDPA).

Petitioner filed his original petition before the AEDPA was enacted. The record reflects that although the petition was dismissed (twice) the court retained jurisdiction over the petition by continuing to require petitioner to file status reports regarding the state PCR proceedings, allowing petitioner to file an Amended Petition, and substituting petitioner's counsel. Therefore all of the claims alleged in the Second Amended Petition (#94) are governed by pre-AEDPA standards.[7]  In

---

7

Respondent concedes that "[the current law in the Ninth Circuit is that because petitioner filed his original petition before the effective date of the AEDPA, the law in effect before the AEDPA applies to all claims, even those added after the effective date of the AEDPA." Response to Second Amended Petition (#109) p. 9. However, respondent "seeks to preserve the issue of the application of the AEDPA to the claims litigated in state court after the effective date of the AEDPA. Those claims would include all of paragraphs 9, 10, and 11 of the Second Amended Petition. Accordingly, respondent argues that even if the claims in the original petition or the Amended Petition are governed by pre-AEDPA standards, the claims added to the Second Amended Petition should be governed by the AEDPA, because those additional claims are claims that were 'adjudicated on the merits in State court proceedings' *after* the enactment of the AEDPA."

19 - FINDINGS AND RECOMMENDATION

other words, 28 U.S.C. § 2254(d) (2011) is not applicable to this proceeding.[8]

In <u>Sumner v. Mata</u>, 449 U.S. 539, the Court noted that unless an exception under 28 U.S.C. § 2254(d) applies, factual findings by state trial and appellate courts that are supported by the record are presumed to be correct. Findings of fact are "basic, primary, or historical facts," and questions of witness credibility. <u>Thompson v. Keohane</u> 516 U.S. 99, 110 (1995) (*citing* <u>Miller v. Fenton</u>, 474 U.S. 104, 112, 114 (1985). The presumption of correctness applies to all state court factual findings, and is not limited to the initial trial court. <u>Pierre v. Thompson</u>, 666 F.2d424, 427 (9th Cir. 1982).

In addition, state court rulings on state law issues are binding on federal courts under pre-AEDPA standards. *See generally* <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991), which stated, "Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state law questions in conducting habeas review." In <u>Wainwright v. Goode,</u>, 464 U.S. 78 (1983), the Court specifically noted that "[i]t is axiomatic that federal courts may intervene in state

---

Id., p. 8. Respondent acknowledges that the Ninth Circuit has ruled against the State of California on that issue in <u>Thomas v. Chappell</u>, 678 F.3d 1086 (9th Cir. 2012). *Id.*

8

Except, of course, to the extent that the standards codified at 28 U.S.C. § 2254(d) are based on pre-AEDPA case law or other federal authority.

court judicial process only to correct wrongs of (federal) constitutional dimension." 464 U.S. at 83 (*citing*, Engle v. Isaac, 456 U.S. 107 (1982)).

Further, the construction of state law is for the state courts, which are the ultimate expositors of state law. Peltier v. Wright, 15 F.3d 860, 862 (9th Cir. 1994). *See also*, Wainwright, *supra*, 464 U.S. at 84 (*citing* Mulaney v. Wilbur, 421 U.S. 684, 691 (1975)).

Mixed questions of law and fact as well as issues of federal law are reviewed *de novo* by federal courts under pre-AEDPA 2254. *Sumner,* 455 U.S. at 597. A mixed question of law and fact "require[s] the application of a legal standard to historical fact determinations." *Pierre*, 666 F.2d at 427 (*citing* Culer v. Sullivan, 446 U.S. 335 (1980)). While the legal conclusions of a mixed question receives *de novo* review, the factual findings by the state court that form the basis for that conclusion are presumed correct. *Keohane*, 516 U.S. at 111-112.

**Strickland v. Washington**: Several of petitioner's claims are based on alleged ineffective assistance of counsel.      The well settled law of ineffective assistance of counsel is set forth Strickland v. Washington, 466 U.S. 668 (1984) pre-dates the enactment of the AEDPA and is applicable to this case.

Under Strickland, a claim that counsel's assistance was so ineffective as to require reversal of a conviction has two components.    First, the petitioner must show that counsel's

performance was deficient; second, the petitioner must show that the deficient performance prejudiced the defense. Id. at 687.

The first prong of the Strickland test requires the petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness. Strickland, supra at 688. There is a strong presumption that counsel's performance falls within the "wide range of reasonable professional assistance.." Id at 689. The court may not second guess counsel's reasonable strategic decisions that were based on facts then known to counsel. However, the court may inquire into whether counsel had any strategy at all in mind, and if so, whether the strategy was reasonable. See, Strickland, 466 U.S. at 689.

The second component of the test requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome." Id.; see also, Williams v. Taylor, 529 U.S. 362, 393-99 (2000). In determining whether a defendant was prejudiced by ineffective assistance of counsel, the court should examine whether the "result of the proceeding was fundamentally unfair or unreliable." United States v. Palomba, 32 F.3d 1456, 1460-61 (9th Cir. 1994) (quoting Lockhart v. Frewell, 506 U.S. 364, 368 (1993)).

The *Strickland* test applies to claims of ineffective assistance of appellate counsel. Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Smith v. Murry, 477 U.S. 527, 535-536 (1986) (applying *Strickland* to claim of attorney error on appeal). Petitioner must show that his counsel was objectively unreasonable in failing to find arguable issues to appeal - "that is, that counsel unreasonably failed to discover non-frivolous issues and to file a merits brief raising them." *Robbins*, 528 U.S. at 285. To establish prejudice, petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief or to raise an issue on appeal, he would have prevailed on his appeal. *Id*. 528 U.S. at 286.

## Exhaustion / procedural default:

Although the original petition in this case was filed before the effective date of the AEDPA, the doctrines of exhaustion of state remedies and procedural default were not changed by the AEDPA.

An application for a writ of habeas corpus "shall not be granted" unless the applicant has exhausted the state court remedies available for those claim, unless it appears there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b) (1994) in the courts of the State[.]" Exhaustion occurs when a petitioner

23 - FINDINGS AND RECOMMENDATION

has given the state courts a "full and fair" opportunity to consider and resolve all federal claims. <u>Keeney v. Tomayo-Reyes</u>, 504 U.S. 1, 10 (1992). If a petitioner can present a claim to the state's Supreme Court, he must do so to properly exhaust that claim. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844-45 (1999).

To "fairly present" a federal claim in state court, habeas petitioners must "include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief." <u>Gray v. Netherland</u>, 518 U.S. 152, 162-63 (1996).; <u>see also</u> <u>Castillo v. McFadden</u>, 399 F.3d 993, 1000 (9th Cir. 2005); *see also*, <u>Insyxiengmay v. Morgan</u>, 403 F.3d 657, 668 (9th Cir. 2005) ("In [the Ninth Circuit], a petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law."); <u>Hiivala v. Wood</u>, 195 F.3d 1098, 1106 (9th Cir. 1999) *(per curiam)* (holding that, when a petitioner failed to cite federal case law or mention the federal constitution in his state court briefing, he did not alert the state court to the federal nature of his claims).

Furthermore, to properly exhaust a claim the petitioner must present the federal claim to the state courts in a procedural context in which the claims' merits will be considered. <u>Castille v. Peoples</u>, 489 U.S. 346, 351-52 (1989);

Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1984); Turner v. Compoy, 827 F.2d 526, 529 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

Ineffective assistance of counsel claims are discrete claims and each specific allegation of ineffective assistance must be exhausted. *See*, Carriger v. Lewis, 971 F.2d 329, 333-334 (9th Cir. 1992), *cert denied* 507 U.S. 992 (1993).

If a petitioner has failed to present a federal constitutional claim to the state's highest court (*i.e.*, has failed to exhaust state remedies) and can no longer do so because of a procedural bar, that claim is procedurally defaulted. Boerckel, 526 U.S. at 848, citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). Once a petitioner has procedurally defaulted a claim, federal habeas corpus review is barred unless the petitioner can demonstrate: (1) cause for the procedural default, and (2) actual prejudice from the failure. Edwards v. Carpenter, 529 U.S. 446, 451 (2000), Coleman, 501 U.S. at 750; see also Wainwright v. Sykes, 433 U.S. 72 (1977); Murray v. Carrier, 477 U.S. 748 (1986); Hughes v. Idaho Bd. of Corr., 800 F.2d 905 (9th Cir. 1986).

Cause for a procedural default exists only if a petitioner can "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488. Prejudice exists only if a petitioner shows that the procedural default "worked to

[petitioner's] actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Demonstrating a mere possibility of prejudice is insufficient. Id.

Procedural defaults may also be excused by demonstrating a "fundamental miscarriage of justice." Edwards v. Carpenter, 529 U.S. 446, 451 (2000). To establish the fundamental miscarriage of justice exception to the exhaustion requirement requires a showing of actual innocence. Schlup v. Delo, 513 U.S. 298, 329 (1995); Calderon v. Thompson, 523 U.S. 538, 559 (1998).

**Discussion:**

Claims 8A, 8B, 8C and 8D: In paragraph 8 of his Second Amended Petition petitioner alleges 5 claims of trial court error: Ground 8A (failing to sever or ordering the joinder for trial of the two counts of murder); 8B (denial of motion *in liminie* on prior act evidence and unfairly prejudicial evidence); 8C (allowing the state to rely on theory of probabilities); 8D (denial of motion for judgment of acquittal; and 8E (failure to suppress petitioner's statement to law enforcement).

Respondent argues that petitioner did not fairly present any federal due process or other federal constitutional argument to the state courts on Grounds 8A - 8D and that these claims are procedurally defaulted. Response to Second Amended Petition (#124) p. 15.

Petitioner responds:

[P]etitioner submits that this claim [Ground 8A - failure

26 - FINDINGS AND RECOMMENDATION

to sever counts][9] is not procedurally defaulted for two
alternative reasons.  First, petitioner did, in fact fairly
present the federal constitutional claim in the underlying
criminal trial and in his direct appeal.   Second, in the
alternative, at the time of his trial, petitioner was not
required to assert an objection at trial based the federal
constitution (sic) in order to avoid a procedural default.

Petitioner's Reply Memorandum (#117) p. 2.

Petitioner's argument that "in substance" the failure to
sever claim was litigated in the state court trial is not
persuasive. In Picard v. Connor, 404 U.S. 270 (1971) the Supreme
Court made clear that 28 U.S.C. § 2254 requires a federal habeas
petitioner to provide the state courts with a "fair opportunity"
to apply controlling legal principles to the facts bearing on
his constitutional claim. Id. at 276-277; see also, Anderson v.
Harless 459 U.S. 4 (1982); Gray v. Netherlands, 518 U.S. 152
(1996)(in order to fairly present a claim petitioner must
"include reference to a specific federal constitutional
guarantee, as well as a statement of facts that entitled the
petitioner to relief").   The state court has been given
sufficient opportunity to hear an issue when the petitioner has
presented it with the factual and legal basis. Duncan v. Henry,
513 U.S. 364 (1995) (legal basis); Correll v. Stewart, 137 F.3d
1404 (9th Cir. 1998) (factual basis). It is not enough that all
of the facts necessary to support the federal claim were before

---

[9]

Petitioner does not specifically address respondents
contention that the other claims of trial court error are
defaulted.

the state courts, Picard v. Conner, *supra* at 277, or that a somewhat similar state-law claim was made. Anderson v. Harless *supra,* (citing Gayle v. LeFevre, 613 F.2d 21 (2nd Cir. 1980).

As discussed above, plaintiff's trial attorney cited the "U.S. Constitution, 5th and 14th Amendments" in his motion to sever. Petitioner's Exhibit 3. Although petitioner's memorandum in support of the motion and his supplemental memorandum in support focused on the analysis of ORS 132.560, the memoranda did cite federal cases and can be liberally, but reasonably, construed as sufficiently "federalizing" the motion to sever.

Although petitioner's appellate attorney assigned error to the trial court's denial of the motion to sever, and argued that the denial resulted in an unfair trial and an infringement upon petitioner's right to testify, petitioner acknowledges that "she did not specifically cite to the federal constitution." Petitioner's Reply Memorandum (#117) p. 3.

Under these circumstances I find that petitioner did not "fairly present" the claim (or any of the claims alleged in paragraph 8) as a federal law claim on appeal.

Petitioner's alternative argument that he was not required to present this claim in the trial court and on appeal and that he "clearly presented a federal constitutional claim with regards to the court's failure to sever counts, by alleging a constitutional violation in the state PCR proceedings,"

28 - FINDINGS AND RECOMMENDATION

Petitioner Reply Memorandum (#117) p. 3, is not quite as straightforward.

Petitioner alleged numerous constitutional claims against the trial court in his Amended Formal Petition for Post-conviction Relief - including the claims allege in Grounds 8A - 8D. Resp. Exhibit 108 p. 15-17. However, the PCR court ruled that petitioner's claims of trial court error were barred by Palmer v. State of Oregon, 318 Or. 354 (1994); Lerch v. Cupp, 9 Or. App 508 (1972), and Hunter v. Maass, 106 Or. App. 438 (1991). Resp. Exhibit 140 p. 6.[10]

Petitioner argues that "in Anderson v. Morrow, the Ninth Circuit held that Oregon's procedural limitation on proper PCR claims cannot give rise to a procedural default in federal court, when the state *trial* occurred before the *Palmer* decision in 1994." Petitioner's reply Memorandum (#117) p. 3-4.

Petitioner argues that "petitioners trial occurred in 1993, before *Palmer* was issued. Therefore under *Anderson*, he is not procedurally barred from pursuing the claim alleged in paragraph

---

[10]

In Kellotat v. Cupp, 719 F.2d 1027 (9th Cir. 1983) the Ninth Circuit noted that Oregon provides two distinct avenues for review of alleged errors, including constitutional violations. First, "most trial errors must be raised by direct appeal to the Oregon Court of Appeals. Lerch v. Cupp, 9 Or. App 508, 497 P.2d 379, rev. denied (1972);Lerch v. Montgomery, 294 Or. 417, 657 P.2d 668 (1983). *Kellotat*, 719 F.2d at 1030. Second, "[f]or violations of a defendant's rights that occurred after trial, or that require further evidentiary hearing for their determination, Oregon provides a statutory remedy in its trial courts by way of the Oregon Post-Conviction Hearings Act, Or. Rev.. Stat. § 138.510 to 138.610 (1981)." *Id*.

8(a) on the asserted ground that he raised it for the first time in his state PCR petition." Petitioner's Reply Memorandum (#117) p. 4.

## 1. The relevant timeline:

Petitioner's trial was held between January and March 1993. He was sentenced on April 14, 1993. He filed his notice of direct appeal on May 5, 1993. On June 23, 1993, the Oregon Court of Appeals decided Palmer v. State, 121 Or. App. 377 (1993) ("Palmer I"). On February 2, 1994, petitioner filed his opening brief on direct appeal. On February 25, 1994, the Oregon Supreme Court decided Palmer v. State, 318 Or. 352 (1994) ("Palmer II"), reversing Palmer I. On September 21, 1994, the State filed respondent's brief on petitioner direct appeal. On November 28, 1994, the Oregon Court of Appeals heard argument on petitioner's appeal, and on December 7, 1994, affirmed without opinion. On February 22, 1995, petitioner filed his Petition for Review to the Oregon Supreme Court. On April 4, 1995, the Oregon Supreme Court denied review. The appellate judgment was issued on May 11, 1995.[11]

## The Palmer case:

The Oregon Supreme Court's decision in Palmer II was an extension of a procedural bar announced in North v. Cupp, 254 Or. 451 (1969). In *North*, the petitioner had failed at trial to

---

[11]A graph illustrating this sequence of events is attached as Exhibit 2.

challenge the admission of evidence that is the product of an illegal search. 254 Or. At 453-54. He attempted to raise that claim in his PCR petition pursuant to ORS 138.530(1) (providing for post-conviction relief where there has been a substantial denial of the petitioner's rights under the state or federal constitution). The court dismissed the claim explaining:

> When a petitioner has a competent attorney who is not guilty of fraud and all the circumstances are such that the attorney would reasonably have been expected to object to constitutionally defective evidence, there is nothing unfair in asserting in post-conviction proceedings the procedural rule requiring a contemporaneous objection.

*Id.* at 459.

The procedural bar announced in *North* was consistently applied at the time of petitioner's trial in January - March, 1993. *See*, eg. Williams v. Cupp, 6 Or. App. 418, 420-21 (1971); Leach v. Cupp, 9 Or. App. 508, 514-16 (1972); Kniss v. Cupp, 27 Or. App 815, 818 (1977); Boyer v. State, 43 Or. App. 629, 633 (1979); Hunter v. Maass, 106 Or. App 438, 441 (1991); Franklin v. State, 109 Or. App. 274, 279 (1992).

In June, 1993, after petitioner's trial,the Oregon Court of Appeals was asked to apply *North* in a slightly different context.

In Palmer I, the petitioner filed a PCR petition challenging the constitutionality of a statute he had been convicted of violating under ORS 138.530(1)(d) (providing for post-conviction relief where the petitioner demonstrates the

31 - FINDINGS AND RECOMMENDATION

"[u]nconstitutionality of the statute making criminal the acts for which petitioner was convicted"), as opposed to the petitioner in *North* who alleged a constitutional violation during the course of his trial.

The Oregon Court of Appeals concluded that the procedural bar established in *North* did not apply to the petitioner, holding that "[n]othing in [the post-conviction statute] requires petitioner to establish that trial or appellate counsel were inadequate in order to raise a constitutional challenge to the criminal statute for the first time in post-conviction proceedings." Palmer I 121 Or. App. at 383.

In February 1994, during the pendency of petitioner's appeal, the Oregon Supreme Court reversed the Oregon Court of Appeals in Palmer II. 318 Or. 352 (1994). The Oregon Supreme Court conceded that "arguably" the opinion did not speak to situations in which a PCR petition alleged under ORS 138.538(1)(d) that the statute the petitioner was convicted of violating was unconstitutional. *Id.* at 359-360. However, the court held that the procedural rule announced in North should apply to those situations.

Application of Palmer to this case:

Petitioner's argument that because his trial occurred prior to Palmer he is not subject to the procedural bar and could raise his federal claim for the first time in his PCR petition fails for the following reasons.

32 - FINDINGS AND RECOMMENDATION

The issue in the <u>Palmer</u> case was whether North's procedural bar to claims under ORS 138.550(1)(a) would also apply to claims under ORS 138.550(1)(d). Petitioner's PCR claim was that the trial court's failure to sever counts constituted a substantial denial of constitutional rights under ORS 138.550(1)(d). That North's procedural bar applied to such claims was firmly established and consistently followed before and after both <u>Palmer I</u> and <u>Palmer II</u>.

In addition, <u>Palmer II</u> was decided during the pendency of petitioner's direct appeal. At that point there was no uncertainty under Oregon law that he was required to assert at trial or on direct appeal any claim that could have been raised during those proceedings. Petitioner could have raised his federal claim(s)in a memorandum of additional authorities without leave of court at any time prior to oral argument. *See*, ORAP 5.5.85(1).

Thus, although petitioner's *trial* occurred prior to <u>Palmer</u>, petitioner was on notice of the <u>Palmer</u> decision and could have raised his state court error claims as federal claims required by *North* and reiterated by <u>Palmer II</u> for at least nine months prior to the point at which they were procedurally defaulted.

Anderson v. Morrow:

Petitioner argues that his "trial occurred in 1993, before <u>Palmer</u> was issued. Therefore, under *Anderson* he is not procedurally barred from pursuing the claim alleged in paragraph

33 - FINDINGS AND RECOMMENDATION

8A on the asserted ground that he raised it for the first time in his state PCR petition." Petitioner's Reply Memorandum (#117) p. 4.

Petitioner's reliance on *Anderson* is misplaced because petitioner does not take into account the court's specific distinction in that case between Palmer I and Palmer II.

In *Anderson*, the petitioner filed a petition for habeas relief under 28 U.S.C. § 2254 alleging that he was prosecuted under unconstitutionally vague criminal statutes. Because the petitioner did not raise this claim at trial, the district court ruled the claim was procedurally defaulted under Palmer II. The Ninth Circuit reversed the district court noting:

> that "[a]lthough Palmer II is the prevailing law in Oregon ... Anderson's purported default occurred *before* the state supreme court decided Palmer II. At the time of Anderson's purported default, Palmer v. State, 121 Or. App. 377, 854 P.2d 955 (1993) (herein after "Palmer I"), was controlling law. In that case, the Oregon Court of Appeals held that: "Nothing in [the post-conviction statute] requires petitioner to establish that trial or appellate counsel were inadequate in order to raise a constitutional challenge to the criminal statute for the first time in post-conviction proceedings." *Palmer I*, 121 Or. App. At 383-84, 854 P.2d 955. The Oregon Supreme Court later reversed this decision in *Palmer II* but only after Anderson's trial.

Andreson v. Morrow, 371 F.3d at 1031.

The Court relied on its decision in Lambright v. Stewart, 241 F.3d 1201, 1203 (9th Cir. 2001), in which it held, "to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be

clear, consistently applied and well established at the time of petitioner's purported default." The court noted that "[a]lthough the Oregon Supreme Court had issued a holding similar to *Palmer* II in North v. Cupp, (citation omitted), the *North* holding was unevenly applied." The Court found that, at the time of petitioner's trial before the *Palmer* I decision was issued, the rule barring PCR claims that were not raised at trial was "not clear or consistently applied," *Anderson*, 371 F.3d at 1031, and held that petitioner's claim that a state statute was unconstitutionally vague – which he had not raised in his trial was not procedurally defaulted for purposes of habeas corpus relief.

*Anderson* is distinguishable from the case at bar in several respects. First, unlike the petitioner in *Anderson*, petitioner's trial occurred *before Palmer* . *At the time of petitioner's trial,* Palmer I *was not* "controlling law." As discussed above, *Palmer I* was an extension of the *North* procedural bar which was controlling law at the time of petitioner's trial. Although the Ninth Circuit opined in *Anderson* that the *North* holding was "unevenly applied," the cases cited above demonstrate that it *was* consistently applied to challenges to constitutional violations, as opposed to challenges to the constitutionality of statutes. Unlike the petitioner in *Anderson*, petitioner in this case does not challenge the constitutionality of a statute. Thus the issue in

35 – FINDINGS AND RECOMMENDATION

*Palmer I*, *Palmer II,* and *Anderson*, - that is whether the *North* procedural bar applies to challenges to the constitutionality of a statute defining the crime of conviction, is not an issue in this case. Lastly, unlike the petitioner in *Anderson*, at the time of petitioner's default on direct appeal, the Oregon Suprme Court had issued its decision in *Palmer II*. As explained above, petitioner could have amended his direct appeal to include a federal claim based on the allegedly improper joinder.

For these reasons, *Anderson v. Morrow* is legally and factually distinguishable from this case and does not support petitioner's argument that he was not required to raise his federal trial court error claims on direct appeal.

Assuming *arguendo* that petitioner did fairly present a claim similar to Ground 8A in his PCR petition, he did not pursue that claim on appeal in a manner in which the merits would be considered.

In his appeal of the PCR court decision that his claims of trial court error were barred by *Palmer, Lerch*, and *Hunter*, petitioner did not assign error to that ruling. Although petitioner listed the failure to sever claim in a "Supplemental Assignment of Error" at the end of his brief,  he did not allege any specific argument or factual basis in support of those additional claims. This procedure did not comply with the requirements of ORAP 5.45 that "[e]ach assignment of error shall identify precisely the legal, procedural, factual, or other

ruling that is being challenged," (ORAP 5.45(3), and that "[e]ach assignment of error shall be followed by the argument" (ORAP 5.45(6). In addition, ORAP 9.05(4)(b) provides that the petition shall contain "concise statements of the legal question or questions presented on review and the rule of law that the petitioner on review proposes be established if review is allowed."

Petitioner's general reference to the claim in the "Supplemental Assignment of Error" did not fairly present the claim to the Oregon Court of Appeals in a procedurally correct manner in which it would be considered on the merits, or fairly present the claim to the Oregon Appellate courts as required by the rules governing exhaustion of state remedies. *See* Baldwin v. Reese, *supra,* 541 U.S. at 32 ("ordinarily a state prisoner dose not 'fairly present' a claim to a state court if that court must read beyond a petition or brief (or similar document) that does not alert it to the presence of a federal claim."); Gray v. Netherlands, supra 518 U.S. at 163 ("for purposes of exhausting state remedies," a petitioner must "include reference to a specific federal guarantee, as well as a statement of the facts that entitle the petitioner to relief."); and Castillo v. Peoples, *supra*, 399 F.2d at 1000 ("[t]o exhaust his claim [a petitioner] must have presented his federal constitutional issue before [the state appellate courts] within the four corners of his appellate briefing").

37 – FINDINGS AND RECOMMENDATION

Summary of default issue:

In summary, petitioner's appellate counsel did not federalize petitioner's trial court error claims (Grounds 8A - 8D) on direct appeal. Although the claims were alleged in petitioner's PCR petition, the PCR court properly rejected them as barred by Palmer v. State of Oregon, Lerch v. Cupp, and Hunter v. Mass. Therefore, these claims were not "fairly presented" to the Oregon Supreme Court in a procedural context in which they would be considered on the merits as required by the well settled law of procedural default. For the reasons set forth above, petitioner's argument that he was not required to present these claims in the trial court and on direct appeal because his trial was pre-Palmer v. State is not persuasive. Petitioner's reliance on Anderson v. Morrow is misplaced as that case is factually and legally distinguishable from this case.

Petitioner is now barred under Oregon law from filing any additional appeals or PCR proceedings,[12] and thus cannot "fairly present" his trial court error claims to Oregon's highest court.

---

[12] ORS 138.071 requires that direct appeals be filed not later than 30 days after the judgment or order appealed from was entered in the register.  ORS 138.650 requires PCR appeals to be filed within 30 days after the entry of final judgment. ORS 2.520 requires petitions for review to Oregon's Supreme Court to be filed within 35 days from the date of the Court of Appeals' decision. See also ORAP 9.05(2) (same)  Finally, ORS 138.550(3) provides that all PCR claims must be asserted in the original or amended petition unless they could not reasonably have been asserted therein, and any claims not so asserted are deemed waived.

38 - FINDINGS AND RECOMMENDATION

Therefore, the claims are procedurally defaulted. Petitioner has not established any cause or prejudice for his procedural default or that he is entitled to the fundamental miscarriage of justice exception to the exhaustion requirement. Therefore, the trial court error claims (Grounds 8A - 8D) should be denied.

**Ground 8E:** Petitioner alleges in Ground 8E that "(t)he state trial court violated petitioner's Sixth Amendment right to counsel when it allowed into evidence petitioner's statement to law enforcement in response to an interrogation that occurred after petitioner had invoked his right of silence and his right to counsel and after his right to counsel had attached by virtue of the grand jury having returned an indictment."

Petitioner filed a motion to suppress statements he made to Detective Scharn on May 15, 1992. Petitioner's Exhibit 1. After a hearing petitioner's motion to suppress was denied by Judge Sloper in a detailed written Findings of Fact and Conclusions of Law, Resp. Exhibit 103, at App 16-20. Judge Sloper found *inter alia*, that petitioner was not in custody during any of the conversations with the police officers as that term is defined by Oregon law and that based on the totality of the circumstances that petitioner's statements were made freely and voluntarily. The court further found that during subsequent contacts with law enforcement officers, Miranda warnings were given and that petitioner was "fully advised and reminded that he had a right to have his attorney present during questioning."

39 - FINDINGS AND RECOMMENDATION

Petitioner was advised that he could cease speaking to officers anytime he wished and advised that his statements would be used against him. Judge Sloper further found that the totality of the circumstances during the interviews did not constitute a coercive environment such that petitioner was unable to make a valid decision to speak with the officers. Respondent's Exhibit 103 at App. 16-20. These factual findings are binding under *Summer*, supra.

On direct appeal, petitioner assigned error to the trial court's decision to admit the statement he made to police on May 15, 1992, the day of his arrest because by then he had been indicted and because he previously retained a lawyer, who had told police not to talk to petitioner unless the attorney was present. The state argued that even if the court erred in admitting petitioner's May 15, 1992, statements, "the error would be no more than harmless." Respondent's Exhibit 103, p. 14.

As noted above, the Oregon Court of Appeals affirmed without opinion, Respondent's Exhibit 107, and the Oregon Supreme Court denied Review.

The record before the court establishes that on May 15, 1992, Sheriff Glerup from Harney County and Detective Scharn from Marion County went to the Blue Heron Farm to arrest petitioner. They had an arrest warrant and a search warrant for petitioner's pick-up truck and trailer, but they did inform

40 - FINDINGS AND RECOMMENDATION

petitioner of the arrest warrant or indictment.   The indictment had been returned that day and both officers knew that petitioner had retained a lawyer who wanted to be present before petitioner was asked any questions.   After Scharn finished searching petitioner's trailer, he asked petitioner if he would be willing to talk to them, and petitioner said "sure."   When asked about Crystal's disappearance, petitioner proceeded to give a variation of his most common story about her disappearance.   Scharn testified concerning petitioner's statements.   Although some details of this story were new or different, the jury had already heard this story from other witnesses. Essentially all of petitioner's statements to the police on May 15, 1992, had previously been made by petitioner to other witnesses. So, even if was error to admit his statements to Detective Scharn, petitioner was not prejudiced because the jury had heard the same statements from other witnesses.

Judge Sloper's findings that petitioner was not in custody and that his statements were voluntary and did not violate his right to counsel are entitled to deference.   Petitioner's argument that he invoked his right to counsel through letters from counsel is without merit.   *See*, Bobby v. Dixon, 132 S.Ct. 26 (2011) (*Miranda* rights may not be invoked "anticipatorily," in a context other than 'custodial interrogation.'). Moreover the time lapse between those letters being sent and May 15, 1992

was a sufficient break in time to allow police to again request if petitioner wanted to speak. Maryland v. Shatzer, 559 U.S. 98 (2010).

Even if the court erred by admitting the statement in violation of petitioner's constitutional rights, petitioner was not thereby prejudiced. See, Brecht v. Abrahamson, 507 U.S. 619 (993) (the "harmless eror" standard in a §2254 case is that habeas relief is warranted only if the error had a "substantial and injurious effect of influence in determining the jury's verdict.").

Petitioner's Ground 8E should be denied.

## Ineffective Assistance of Counsel Claims 9 A - 9 I:

Respondent argues that Claims 9 B, E and F are procedurally defaulted.

In Claim 9 B petitioner alleges that trial counsel failed to object to the prosecution's closing argument that allegedly shifted the burden of proof to the petitioner by arguing that he had failed to provide test results of his soil analysis to the jury.

Petitioner alleged this claim in his PCR petition but argued simply that "trial counsel should have made objections to the prosecutor's closing arguments and cited the due process clause as authority." Resp. Exhibit 157, p. 43. Petitioner made a similar argument to the Oregon Supreme Court. See, Resp. Exhibit 159, p. 2. I find that petitioner's reference to the

42 - FINDINGS AND RECOMMENDATION

claim and cursory argument failed to argue the claim to the Oregon Court of Appeals or the Oregon Supreme Court with sufficient specificity to "fairly present" the claim. *See*, Baldwin v. Reese, 541 U.S. 27 (2007).

In Claim 9 E petitioner alleges that trial counsel failed to request an appropriate limiting instruction restricting the jury's ability to consider a finding of guilt on one count as evidence of guilt on the other count, and failed to cite federal authority in support.

Petitioner made a similar claim in his PCR petition, Claim 7(p), but subsequently withdrew the claim. Resp. Exhibit 109. Accordingly this claim was never fairly presented to the Oregon courts and is procedurally defaulted. [13]

Petitioner alleges in Claim 9 F that trial counsel "failed to object to the trial court's limiting jury instruction on the relation of one murder charge to the other and failed to cite federal authority in support." Petitioner raised this claim in his PCR petition as Claim 7(q). Respondent's Exhibit 108, p. 8. However, petitioner subsequently withdrew this claim from the PCR petition, Respondent's Exhibit 109.

---

[13]

Moreover, PCR Claim 7(p) alleged that trial counsel was deficient for failing to request a jury instruction on the limitation and use of *evidence* relating to Count One to prove Count Two, and vice versa – which is distinguishable from not requesting a jury instruction that a *finding of guilt* on one count could not be used as evidence of guilt on the other count – ie. his Claim 9 E in this proceeding.

43 - FINDINGS AND RECOMMENDATION

Although formally withdrawn from the PCR petition, petitioner appealed the issue to the Court of Appeals and the Oregon Supreme Court. However, the claim was not presented in a procedural context in which the merits would be considered[14], it was not fairly presented and is procedurally defaulted.

Based on the foregoing, I find that Claims 9 B, E and F are procedurally defaulted. Assuming Grounds 9 B, E and F were fairly presented or that their procedural default is excused, they should be denied on the merits for the reasons set forth below.

Petitioner alleges in Claim 9 A that his trial counsel was ineffective for failing to call a soil expert after he told the jury in his opening statement that he would do so.

At the PCR hearing, trial counsel testified that he did not call the soil expect because of a "strategic decision," but thought in retrospect "that decision was probably a mistake." Respondent's Exhibit 137 at p. 8. The PCR court found that counsel's decision not to call the expert witness "may have been an error on his part." However, the court further found that it did not reach the "constitutional level that is required by law to render his performance deficient" and that no evidence was presented that the failure to call the witness substantially prejudiced the defendant. Respondent's Exhibit 140 at p. 4.

---

14

The PCR court can only consider claims presented in the PCR petition. ORS 138.580.

Reasonable strategic decisions are not subject to second-guessing under *Strickland*. Moreover, I agree with the PCR court that in view of the other "overwhelming evidence" presented by the state that this minor issue could not have made a difference in the outcome of the trial.

In Claim 9 B petitioner alleges that trial counsel should have objected to the prosecutor's statement in rebuttal which "shifted the burden of proof to petitioner by arguing that he had failed to provide test results of his soil analysis to the jury."

I have determined above that this claim is procedurally defaulted. Moreover, I find that the prosecutor's statement was simply an observation that something trial counsel had said in opening would happen had not happened during the trial, and cannot reasonably be construed as improperly shifting the burden of proof to petitioner.

In addition, I find that in view of the common practice of not objecting during opening statements and closing arguments, the decision not to do so is within the "wide range" of permissible professional legal conduct. U.S. v. Necoechea, 986 F.2d 1273, 1281 (9th Cir. 1993). In any event, petitioner has not presented any evidence that he was prejudiced by his counsel's failure to object to the prosecutor's statement or that the failure to do so affected the outcome of his trial.

Petitioner alleges as Grounds 9 C and 9 D that trial

45 - FINDINGS AND RECOMMENDATION

counsel should have raised federal grounds in support of his motion for acquittal (9 C) [PCR claim 7(a)] and the motion *in limini* (9 D)[PCR claims 7(e)].     The PCR court denied these claims, finding that "petitioner failed to state facts that counsel's failure to state federal grounds in support of his motion for acquittal resulted in a substantial denial of his constitutional rights at the trial proceeding," and that "[n]o evidence was presented that counsel had any reason to object because those issues were preserved.  In any event, no evidence was presented that, had counsel objected and cited federal authorities, it would have made a substantial denial of his constitutional rights at the trial proceeding."  (Sic). Respondent's Exhibit (#140) p. 2-3.

The PCR court finding is supported by the record. Moreover, petitioner has not presented any evidence in this proceeding that citing federal authorities in support of his trial motions would have resulted in different rulings on those motions.

Petitioner alleges in Grounds 9 E and 9 F that his trial counsel was deficient for failing to request limiting jury instructions restricting the jury's ability to consider a finding of guilt on one count as evidence of guilt on the other count (9 E)
and failed "to object to the trial court's limiting instruction

on the relation of one murder charge to the other (9 F).[15]

The court gave the jury instruction submitted by counsel that properly instructed the jury that they could not consider the fact that petitioner was charged with two crimes as evidence. The instruction did not tell the jury not to cross-consider the evidence because the trial court had ruled that cross-admissibility of the evidence was proper under OEC 404(3), and that finding is binding on this court.

The jury instructions requested by counsel were given by the court as requested. They were proper statements of the law based on the evidentiary rulings of the court. Petitioner's Grounds 9 E and 9 F should be denied.

Petitioner alleges in Ground G that trial counsel failed to object on federal constitutional grounds when the trial court "improperly answered the jury's question regarding the use of the fact that petitioner had been charged with one murder as evidence that he committed the other murder."

The record reflects that during deliberations, the jury sent out a question asking if the reference to "charged" in the instructions meant "charged only." (Tr. at 4768). The trial court answered "yes." (Tr. at 4768). Trial counsel objected on the ground that it improperly focused on "only." (Tr. at 4770). Counsel also again moved for severance and for a mistrial based on the court's answer. The court denied both motions.

---

[15]I have found above that ground 9 F is procedurally defaulted.

Thus, counsel did object to the court's response – and has not submitted any evidence that a federal argument would have fared any better. Moreover, the answer was correct, because the court had ruled that the evidence was admissible under ORE 403(3) and this court is bound by that evidentiary ruling. Moreover, the court instructed the jury that it was to consider the cases separately.

Petitioner alleges in Ground 9 H and 9 I that his trial attorney should have objected to comments by the prosecutor during rebuttal argument.9 H alleges that counsel should have objected to the prosecutor's "lightening strikes twice" argument that it was unlikely that petitioner would have two wives vanish unless petitioner killed them. Ground 9 I alleges that counsel should have objected to the prosecutor's "improper argument in closing" that the jury could use the evidence relating to one count to establish petitioner's guilt on the other count.

The PCR court found against petitioner on both of these claims, finding that [t]he closing remarks made by the trial prosecutor were proper. *See*, Respondent's Exhibit #140. Petitioner has not proved differently.

The record reflects that during closing argument, petitioner's trial counsel stated:

> Now, whether Miss Middle has talked about it or not, it is a constant theme in this case that lightening couldn't strike twice. Whether any of you have voiced that or not, it's certainly apparent on the face. Someone in the jury room is going to say well, it

48 - FINDINGS AND RECOMMENDATION

couldn't happen twice.   Someone on the jury should
respond to that by saying that is not a piece of
evidence.   In fact, the odds of something happening is
not evidence.   You're not going to hear a jury
instruction, for example, to that effect.   The Judge is
never going to tell you because there are two, you may
consider that. A jury trial is not a crapshoot.

No statisticians were allowed to testify because
it's not admissible evidence.   And, in fact, there is
another jury instruction that deals exactly with that
issue, probably the most important jury instruction in
this case, and that is this one.   Separate deliberation
on each charge.

And nobody needs to write this down. Again, I'm just
trying to give you a framework.  The Judge will read this
to you and then you'll have it in the back.   But what I
am talking about with regard to these two and the odds,
you must separately deliberate on each of these.

You can consider each charge separately and decide
what the evidence shows as to each charge.   The parties
are entitled to have each charge separately decided by
you on the evidence and on the law applicable to the
charge.   You may not use the two charges for the purpose
of drawing the inference that because the defendant has
been charged with the murder of Ruth Crystal Miller, he
may be guilty of the murder of Carol Ann Miller, and vice
versa. No matter how impossible you may think that is,
that's an oath that you took and part of the guarantee
the constitution requires.

(Tr. at 4699 – 4701).

The prosecutor responded in rebuttal as follows:

Defense attorney made the comment lightening doesn't
strike twice.   Well, apparently it does.   While you
cannot take the very fact that they have been – that
Gerald Miller was charged with an offense as evidence,
you certainly can use the evidence that you received in
both trials to make your decision.   You can use that
evidence to determine what's going on in Gerald Miller's
mind; what was his intent; what was his motive; what was
his opportunity; what was the plan.

(Tr. at 4747 – 4748).

The prosecutor's comment was proper.   She was simply
responding to trial counsel's reference to lightening and

49 – FINDINGS AND RECOMMENDATION

properly outlining the permissive use of the evidence under OEC 404(3) - as previously determined by the court. Counsel had no basis to object to the prosecutor's comments either under state or federal law.

Based on all of the foregoing, I find that petitioner has failed to establish that his trial counsel was constitutionally deficient under *Strickland.* If counsel made unprofessional errors, the errors were not of such magnitude that they affected the outcome of petitioner trial.

Petitioner's claims 9 A - 9 I should be denied.

## **Ineffective Assistance of Appellate Counsel Claims 10 A - 10 F:**

Claims of ineffective assistance of appellate counsel are also reviewed under the *Strickland* standard discussed above. Smith v. Robbins, 528 U.S. 259, 285 (2000); Miller v. Keeney, 882 F.2d 1428 (9th Cir. 1989). In order to prevail a petitioner must establish that appellate counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's unprofessional errors, petitioner would have prevailed on appeal. Id. It is not unreasonable or unprofessional for appellate counsel not to raise on appeal every colorable or non-frivolous issue. Jones v. Barnes, 463 U.S. 45, 754 (1983). Rather, the "process of 'winnowing out weaker claims on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence,

is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527 s536 (1986).

Petitioner alleges in Grounds 10 A - F that his appellate counsel should have raised federal claims on the following issues: 10 A - sufficiency of the evidence; 10 B - motion *in liminie* on use of evidence; 10 C - the prosecutor's comment in rebuttal about "lightening strikes twice;" 10 D - the prosecutor's closing argument on the use of the evidence; 10 E - the trial court's instruction on the use of evidence, and 10 F - the trial court's answer to the jury's question.

Petitioner alleged Claim 10 B in his PCR petition as Claim 8(f). Petitioner alleged Claim 10 D in his PCR petition as Claim 8(o). Assuming these claims can be interpreted as having been fairly presented to the Oregon courts, they should be denied because petitioner has not presented any evidence to establish a probability that the outcome of his appeal would have been different if his appellate counsel had made these claims based on federal arguments.

Petitioner specifically withdrew Claim 10 E (PCR claim 8g) - no federalized jury instruction objection and Claim 10 F (PCR claim 8q) - no federalized trial court answer to jury question, from his PCR proceeding. See Respondent's Exhibit 109. Accordingly, those claims were not fairly presented to the Oregon court and they are procedurally defaulted.

Petitioner raised Claims 10 A and 10 C and several other

ineffective assistance of appellate counsel claims in his PCR proceeding,[16] but the PCR court concluded: "There was no evidence presented that appellate counsel was inadequate and even if he failed to raise an issue that issue more probable than not result would have been different." (Sic). Resp. Exhibit 140 p. 5.[17]

The PCR court conclusion is supported by the record. Moreover, except as discussed below as to petitioner's "Supplemental Claim," petitioner has not presented any evidence in this proceeding that there is a reasonable probability that he would have prevailed on appeal if his appellate attorney had "federalized" the arguments regarding the claims alleged in Grounds 10 A - F.

Relief on petitioner's Grounds 10 A - F should be denied.

**Claims 11 A and 11 B:** Grounds 11A and 11B petitioner alleges

---

16

In petitioner's Amended Formal Petition for Post Conviction Relief, these claims were framed in terms of a "failure to preserve the issue(s) for federal habeas review."  See, Respondent's Exhibit (#108) p. 9 - 13. As discussed in Respondent's (PCR) Answering Brief,  the allegation that an issue was not preserved for federal habeas corpus review does not identify a cognizable form of prejudice because it does not assert that the appellate counsel's omission affected the petitioner's direct criminal proceeding. See, Respondent's Exhibit 158, p. 37-38.

17

The PCR finding is a bit garbled, but is reasonably construed as a finding that even if appellate counsel was inadequate by failing to raise an issue, petitioner failed to prove that raising the issue would have made a difference in the outcome of the appeal, ie. that petitioner was not prejudiced.

that the prosecutor made improper arguments at trial and in closing argument. Petitioner alleges in Ground 11(A) that the prosecutor's "lightening strikes twice" comment was improper. In Ground 11(B) petitioner alleges that the prosecutor improperly argued that the jury could consider evidence from one case in reviewing the other.

Petitioner alleged these prosecutorial misconduct claims in his Amended Formal Petition for Post-Conviction Relief as Claims 9(a) and 9(b). Respondent's Exhibit 108 p. 14. The PCR court held that the claims were not proper claims for post-conviction relief and barred by *Palmer v. State*. Respondent's Exhibit 140 at p. 5-6. The PCR court further held: "In any event, there is insufficient evidence of prosecutorial misconduct." Id. P. 5.

Petitioner listed the prosecutorial misconduct claims in his PCR appeal brief among the 38 claims in his "Supplemental Assignment of Error" and similarly in his petition for review to the Oregon Supreme Court. However, as with the trial court error claims discussed above, he did not present them as required by State of Oregon procedural rules or "fairly present" them as defined by the rules of exhaustion.

The same analysis that the court set forth above as to petitioner's trial court error claims, Grounds 8A - 8D applies to petitioner's prosecutorial claims, Grounds 11A and 11B. The claims are procedurally defaulted and petitioner has not

established cause and prejudice for his default or that he is entitled to the "fundamental miscarriage of justice" exception to the exhaustion requirement.

In addition, the PCR court finding that "[t]he closing remarks made by the prosecutor were proper," Respondent's Exhibit 140 at p. 3, is supported by the record. As set forth above regarding petitioner's claims against trial counsel (Grounds 9H and 9I), the prosecutor's comments were not improper. The prosecutor was simply responding to trial counsel's reference to "lightening," and accurately describing the permissive use of evidence under ORE 404(3).

Petitioner's prosecutorial misconduct claims alleged in Grounds 11A and 11B should be denied.

Supplemenal Claim:

By Order (#133) entered March 8, 2016, petitioner's Supplemental Memorandum (#128) was construed in part as a motion to file an amended petition to add a claim of ineffective assistance of appellate counsel for failing to argue that a federal Due Process violation occurred when the trial court denied petitioner's motion to sever counts 1 and 2 for trial, and petitioner was allowed 7 days to file such an amendment.

On March 21, 2016, petitioner filed a supplemental petition (claim) alleging the following:

> Petitioner was denied effective assistance of appellate counsel in violation of the Sixth Amendment right to counsel and the Fourteenth

54 - FINDINGS AND RECOMMENDATION

> Amendment right of Due Process[18] when appellate
> counsel failed to claim a violation of petitioner's
> right of Due Process under the Fifth and Fourteenth
> Amendments to the United States Constitution
> resulting from the trial court's joinder of Counts
> 1 and 2 or its denial of petitioner's motion to
> sever Counts 1 and 2.

Petitioner's Supplemental Claim (#134) p. 1.

As discussed above, plaintiff's trial attorney cited the "United States Constitution, 5th and 14th Amendments" in his motion to sever, and although petitioner's memorandum in support of the motion and his supplemental memorandum in support focused on an analysis of Oregon's severance statute, ORS 132, 560, the memoranda cited federal cases and can be liberally construed as sufficiently "federalizing" the motion to sever claim.

However, although petitioner's appellate attorney assigned error to the trial court's denial of the motion to sever, she did not specifically cite the federal constitution. Therefore this court has determined that the failure to sever claim based on federal due process was procedurally defaulted.

Petitioner's supplemental claim is that his appellate counsel's failure to federalize the motion to sever claim constituted ineffective assistance of appellate counsel.

---

18

"The reference to the Fourteenth Amendment right of Due Process is made because, as Respondent points out (Document 132, footnote 1), the right of effective assistance of appellate counsel is grounded in the Due Process clause. *Evitts v. Lucy*, 469 U.S. 387 (1985)." Petitioner's Supplemental Claim (#134) p. 1. fn. 1.

Although petitioner's post-conviction counsel alleged numerous claims of ineffective assistance of trial and appellate counsel based on their failure to federalize certain arguments, he did not make a claim that appellate counsel was ineffective for failing to federalize the motion to sever claim.   Therefore, the ineffective assistance of appellate counsel claim based on failure to federalize the motion to sever argument is procedurally defaulted.

In <u>Martinez v. Ryan</u>, __ U.S. __, 132 S.Ct. 1309 (2012) the Supreme Court held that petitioner's may use ineffective assistance of post-conviction counsel in the cause and prejudice formula to excuse the default of ineffective assistance of trial counsel claims. In <u>Van Nguyen v. Curry</u>, 736 F.3d 1287 (9th Cir. 2013), the Ninth Circuit Court of Appeals extended the *Martinez* rule to excuse the procedural default of appellate counsel.

To establish cause for the procedural default of an ineffective assistance of counsel claim, petitioner must show that the PCR counsel was ineffective under *Strickland* for not raising a particular claim.   *Martinez*, 132 S.Ct. at 1318. Specifically, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.   *Strickland*, 466 U.S. at 687. Petitioner must also show that the underlying ineffective assistance of counsel claim is "substantial," meaning that it

56 - FINDINGS AND RECOMMENDATION

"has some merit." *Martinez*, 132 S.Ct. 1318. *See also*, Hurles v. Ryan, 752 F.3d 768 (9th Cir. 2014).

In his Petition for post-conviction relief, petitioner alleged 18 claims of ineffective assistance of appellate counsel. Respondent's Exhibit 108, p. 9-13. Several of those claims were that appellate counsel "failed to raise as an issue on appeal and frame it in federal constitutional terms" various alleged trial court errors. However, as noted above, the petition did not allege that appellate counsel was ineffective for failing to raise a federal constitutional challenge to the trial court's denial of the severance motion.

Joinder of crimes inherently carries a high risk of undue prejudice. United States v. Lane, 474 U.S. 438, 446 n. 8 (1986). Misjoinder rises to a level of a constitutional violation if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial. Id.; Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991). The Ninth Circuit has recognized a "particularly great risk of prejudice when joinder (1) "allows evidence of other crimes to be introduced in a trial where the evidence would otherwise be inadmissible," or (2) results in "joinder of a trying a strong evidentiary case with a weaker one." Sandoval v. Calderon, 241 F.3d 765, 772 (2000). Disparity of evidence creates a much higher degree of prejudice than those in which some degree of prejudice inherently stems from joined charges. Id.

In this case, the record reflects that the evidence of the case against petition on Count 1 (Murder of petitioner's first wife Crystal Miller) was comparatively weak as compared to the much stronger case against him in Count 2 (murder of petitioner's second wife, Carol Miller).

The Ninth Circuit's holding in Bean v. Calderon, 163 F.3d 1073 (1998) is relevant. In *Bean*, after comparing the compelling evidence against the defendant on one murder charge to the relatively weak evidence on the other murder charge, the court concluded:

> After careful examination of the record, we conclude that joinder of the Schatz and Fox indictments deprived Bean of a fundamentally fair trial on the Fox charges Consolidation of the relatively weak Fox case with the compelling Schatz charges in a single trial violated Bean's right to due process by leading the jury to infer criminal propensity. This impermissible inference, in turn, allowed the jury to rely upon the Schatz evidence to strengthen the otherwise weak case against him for the Fox offenses.

163 F.3d at 1083.

Although the *Bean* case was not decided until after petitioner's, in 1994 when the appellate brief was filed in petitioner's case, several cases supported a due process claim based on misjoinder of cases including several in which disparate evidence was an issue. See, United States v. Lane, 474 U.S. 438, 446 n. 8 (1986); Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991); Herring v. Meachum, 11 F.3d 374, 377-78 (2nd Cir. 1993); United States v. Lewis, 787 F.2d 1318 1322-23

(9th Cir. 1986); <u>United States v. Clayton</u>, 450 F.2d 16, 19 (1st. Cir. 1971) (upholding joinder of two different drug charges in part because "this is *not* an instance where weak evidentiary case and a strong one were joined in the hope that an overlapping consideration of the evidence would lead to a conviction on both).

However, the critical distinction between these disparate evidence due process cases and the case at bar is that petitioner's trial court had ruled the evidence supporting the different counts was cross-admissible.

Based on the foregoing, I find that post-conviction counsel was not deficient in failing to allege a claim that appellate counsel was ineffective for failing to allege a claim and federal due process argument as to the court's denial of the motion to sever because the underlying claim (i.e. that appellate counsel was deficient for failing to allege a due process argument in support of the severance issue) fails on the merits.

The underlying claim fails because the trial court had ruled that under state law the evidence supporting each murder charge against petitioner was admissible as to the other murder charge for permissible, non-character purposes. The Oregon Court of Appeals rejected petitioner's claim that the trial court had erred in admitting the evidence, and the Oregon Supreme Court denied review. This court is bound by the state court's

evidentiary ruling and relevancy determination. Estelle v.
McGuire, 502 U.S. 62, 67-68 (1991).

In other words, unlike the situation in *Bean*, the trial
court had determined that the evidence relating to the separate
counts was cross-admissible under OEC 404(3).   If the evidence
of the separate count would be admissible upon severance,
prejudice is not heightened by joinder. *See*, United States v.
Johnson, 820 F.2d 1065, 1070 (9th Cir. 1987); *see also*, Sandoval
v. Calderon, 241 F.3d 765, 772 (9th Cir. 2000) (distinguishing
*Bean* on the basis that "cross-admissibility dispels the
prejudicial impact of joining all counts in the same trial"
because "the jury would have heard the evidence in any event.").

Therefore, I find that petitioner's appellate counsel was
not deficient for failing to make the claim alleged in
petitioner's Supplemental Claim.   Assuming *arguendo* that
appellate counsel erred in failing to make a federal due process
claim and argument in support of the motion to sever, petitioner
was not prejudiced because the court had ruled that the evidence
was cross-admissible.

Based on the foregoing, I recommend that relief on
petitioner's Supplemental Claim be denied.

**Conclusion:** Based on all of the foregoing, I find that relief on
all of the claims alleged in petitioner's Second Amended
Petition (#94) and his Supplemental Claim (#134) should be
denied.   The Clerk of the Court should be directed to enter a

judgment dismissing this proceeding.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to _de novo_ consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

## *Certificate of Appealability*

*Should petitioner appeal, a certificate of appealability should be granted.*

DATED this 7 day of April, 2016.

_____
Mark D. Clarke
United States Magistrate Judge

## APPENDIX 1

### GROUNDS FOR RELIEF

8. Petitioner's imprisonment and restraint are unlawful as set forth in the following particulars:

A. The state trial court violated petitioner's due process right to a fair trial under the United States Constitution's Fourteenth Amendment and the Fifth Amendment right to due process of law, by failing to sever, or by ordering the joinder for trial of the two counts of murder.

B. The state trial court violated petitioner's due process right to a fair trial under the United States Constitution's Fourteenth Amendment and the Fifth Amendment right to due process, by denying petitioner's motions *in limine* to preclude the admission of prior act evidence and unfairly prejudicial evidence.

C. The state trial court violated petitioner's due process right to a fair trial under the United States Constitution's Fourteenth Amendment and the Fifth Amendment right to due process of law, by allowing the state to rely on a theory of probabilities in securing the murder convictions against

petitioner.

D. The state trial court violated petitioner's due process right to a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution when it denied petitioner's motion for judgment of acquittal and ruled that there was sufficient evidence to allow the jury to find petitioner guilty of the murder charges, when there were no bodies found and no evidence of the manner, means, or location of the alleged deaths.

E. The state trial court violated petitioner's Sixth Amendment right to counsel when it allowed into evidence petitioner's statement to law enforcement in response to an interrogation that occurred after petitioner had invoked his right of silence and his right to counsel and after his right to counsel had attached by virtue of the grand jury having returned an indictment.

9. Petitioner was denied effective assistance of trial counsel in violation of the Sixth Amendment right to counsel when trial counsel failed to exercise professional skill and judgment in a reasonable manner, in the following particulars:

A. Trial counsel failed to present testimony of an expert witness during trial after promising the jury to do so in his opening statement; alternatively, trial counsel was constitutionally ineffective by promising the jury that it would hear from an expert witness without adequately determining whether in fact the expert would be called.

B. Trial counsel failed to object to the prosecution's improper argument in closing that in effect shifted the burden of proof to the petitioner by arguing that he had failed to provide test results of his soil analysis to the jury;

C. Trial counsel filed to adequately articulate federal constitutional grounds in support of petitioner's motion for judgment of acquittal asserting that the state had failed to put on sufficient evidence to prove the women were murdered and that petitioner murdered them.

D. Trial counsel failed to articulate an objection based on federal constitutional grounds to the trial court's denial of petitioner's motions *in limine* to preclude the admission of uncharged misconduct and other unduly prejudicial evidence.

E. Trial counsel failed to request an appropriate limiting jury instruction restricting the jury's ability to consider a

63 - FINDINGS AND RECOMMENDATION

finding of guilt on one count as evidence of guilt on the other count, and failed to cite federal authority in support.

F. Trail counsel failed to object to the trial court's limiting jury instruction on the relation of one murder charge to the other and failed to cite federal authority in support;

G. Trial counsel failed to object on federal constitutional grounds when the trial court improperly answered the jury's question regarding the use of the fact that petitioner had been charged with one murder as evidence that he committed the other murder.

H. Trail counsel failed to object to the prosecutor's "lightening strikes twice" argument in rebuttal that it was unlikely that petitioner would have two wives vanish into thin air unless the petitioner killed them.

I. Trial counsel failed to object to the prosecution's improper argument in closing that the jury could use evidence relating to one count to establish petitioner's guilt of the other charged count.

10. Petitioner was denied effective assistance of appellate counsel in violation of the Sixth Amendment right to counsel in the following particulars:

A. Appellate counsel failed to raise on appeal the federal constitutional sufficiency of the evidence presented by the state needed to sustain the convictions.

B. Appellate counsel failed to raise on appeal the federal constitutional violation resulting from the denial of petitioner's motion *in limine* to preclude the use of uncharged conduct and other unfairly prejudicial evidence as evidence of guilt at trial, and the state's use of the evidence thereof.

C. Appellate counsel failed to raise as an issue on appeal as plain error and to frame in constitutional terms, the prosecution's improper closing argument to the jury wherein the prosecutor said "lightening strikes twice" in reference to the improbability that the petitioner's first and second wives would each disappear without the petitioner having murdered them.

D. Appellate counsel failed to raise as an issue on appeal as plain error and to frame it in constitutional terms, the prosecution's closing argument that the jury could use evidence relating to one count to establish petitioner's guilt of the other charged count.

E. Appellate counsel failed to raise as an issue on appeal as plain error and to frame it in federal constitutional terms, the trial court's failure to instruct the jury on the limitations and use of the evidence relating to Count One to prove Count Two, and vice versa.

F. Appellate counsel failed to raise as an issue on appeal as plain error and to frame it in federal constitutional terms, the trial court's erroneous and improper answer to the jury's questions regarding the use of the fact that petitioner had been charged with one murder as evidence that he committed the other murder.

11.  The prosecutor in the state trial violated petitioner's right to a fair trial under the Fourteenth Amendment to the United States Constitution and the right of Due Process under the Fifth Amendment to the United States Constitution in the following particulars:

A. The prosecutor improperly argued in closing argument to the jury that "lightening strikes twice" in reference to the improbability that petitioner's first and second wives would each disappear without petitioner having murdered them.

B. The prosecutor improperly argued, in closing argument to the jury, that the jury could use evidence relating to one count to establish petitioner's guilt of the other charged count.

Second Amended Petition for Habeas Corpus Relief (#94) p. 2 - 6.